IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MAINSTAY COTTAGES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION 08-0543-WS-B** |
| ) | |
| **AUTO OWNERS INSURANCE** ) | |
| **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (doc. 29). The Motion has been briefed and is now ripe for disposition.

**I.      Background.**

Plaintiff, Mainstay Cottages, LLC ("Mainstay"), was the owner of certain real property, to-wit: a two-story frame, residential structure (the "Insured Building") located in Gulf Shores, Alabama. The Insured Building was destroyed by Hurricane Ivan in September 2004. Mainstay subsequently rebuilt the structure, and filed a claim for increased-cost-of-compliance benefits under a federal flood insurance policy issued by defendant, Auto Owners Insurance Company ("Auto Owners"). When Auto Owners denied coverage, Mainstay filed this action seeking payment of that claim in the amount of the policy limits of $30,000.[1]

---

[1]      In the Complaint, plaintiff predicated federal subject matter jurisdiction on 42 U.S.C. § 4072, which provides that if a claim under the National Flood Insurance Program is denied, the claimant "may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy." This jurisdictional basis is questionable, given the Eleventh Circuit's explanation that "[o]n its face, § 4072 provides only for suits against FEMA. It does not discuss the WYO program, and we therefore do not read it as addressing suits against WYO companies." *Newton v. Capital Assur. Co.*, 245 F.3d 1306, 1309 (11th Cir. 2001) (declining to consider whether § 4072 could support federal jurisdiction against a WYO company). Nonetheless, federal jurisdiction clearly lies here

### A.     *The Nature of the Coverage Dispute.*

The relevant facts are undisputed. As an initial matter, the parties agree that at the time of Hurricane Ivan, Mainstay was covered by a Standard Flood Insurance Policy ("SFIP") issued pursuant to the National Flood Insurance Program ("NFIP") by Auto Owners, which was participating in the NFIP as a Write-Your-Own ("WYO") carrier. The declaration page of the SFIP issued to Mainstay reflects that the insured property address was 7036 Beach Shore Drive in Gulf Shores, Alabama, that Mainstay was the named insured, and that the Insured Building was an elevated building used as a single-family residence and consisting of two floors. (Doc. 30, Exh. C.)

The policy included several coverages, including *inter alia* "Coverage A" (which insured Mainstay for direct physical loss to the building from flood) and "Coverage D," also known as "increased cost of compliance" or "ICC" coverage. The SFIP provided that ICC coverage up to a limit of $30,000 would be available to Mainstay "to comply with a State or local floodplain management law or ordinance affecting repair or reconstruction of a structure suffering flood damage." (Doc. 30, Exh. A, at § III.D.1 - .2.)[2] According to the express policy language, eligibility for ICC coverage hinged on various conditions, including that "payment for the loss under this Coverage D will be for the ***increased cost to elevate ... caused by the enforcement of current State or local floodplain management ordinances or laws***." (*Id.* at § III.D.4.a. (emphasis added).) If there is no increased cost to elevate a rebuilt structure in conformity with enhanced state and local flood requirements (*i.e.*, if at the time of loss the destroyed building

---

pursuant to 28 U.S.C. § 1331, inasmuch as "a complaint alleging breach of an SFIP satisfies § 1331 by raising a substantial federal question on its face." *Newton*, 245 F.3d at 1309. This determination is bolstered by applicable regulatory provisions, wherein the Federal Emergency Management Agency states that it "clarified the policy language pertaining to jurisdiction, venue and applicable law to emphasize that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law." 65 Fed.Reg. 34,824, 34,827 (May 31, 2000).

[2]     The declaration page reflects that Mainstay's premium for ICC coverage for the July 2004 to July 2005 policy period was just $4.00. (Doc. 30, Exh. C.)

complied with today's floodplain ordinances), then ICC coverage is not available.[3]  The dispute in this case is whether the Insured Building did or did not comply with the applicable floodplain management ordinance at the time of Hurricane Ivan.  Auto Owners maintains that it did, and that ICC coverage is therefore lacking.  By contrast, Mainstay argues that it did not, and that ICC coverage therefore applies.  Both sides agree that Mainstay's entitlement (or lack thereof) to ICC coverage turns exclusively on the narrow question of whether the Insured Building complied with Gulf Shores elevation requirements as of September 2004.[4]

> B.     *Applicable Gulf Shores Building Requirements.*

In 2001, the City of Gulf Shores, Alabama adopted a new Flood Damage Control Ordinance (the "Ordinance").[5]  Among other requirements, the Ordinance provides that, as a general proposition, "[n]ew construction or substantial improvement of any structure ... shall have the lowest floor, including basement, elevated no lower than the base flood elevation."

---

[3]   As Auto Owners put it in a letter to Mainstay dated August 25, 2006, "ICC coverage is only available if the dwelling did not meet the minimum ordinance requirements at the time of the loss."  (Decker Dep., Exh. 4.)  Auto Owners reiterated this position in a letter to Mainstay dated December 26, 2006, stating that "ICC coverage is only available if the dwelling does not meet the minimum floodplain ordinance requirements."  (*Id.*, Exh. 13.)  FEMA echoed this interpretation of the SFIP in an April 2007 letter to Mainstay, explaining that "[i]f your structure complied with your community's ordinance regarding elevation height of the lowest floor at the time of the flood, ICC is not applicable."  (*Id.*, Exh. 12.)  Both parties are in agreement with that general proposition.

[4]   Other eligibility criteria for Coverage D include that the structure must be covered under Coverage A, and must have sustained a flood loss, the cost of repair for which exceeds 50% of its market value.  The parties agree that these conditions are satisfied here.  Likewise, there is no issue presented concerning the timeliness of Mainstay's claim or the sufficiency of its cooperation with Auto Owners or FEMA during the claims-handling process.  Thus, the only eligibility/coverage issue joined herein is whether Mainstay's building satisfied current Gulf Shores elevation ordinances at the time of loss.

[5]   This Ordinance long post-dated the construction of the Insured Building, which occurred in the 1960s.  (Gilges Aff., ¶ 4.)  Plaintiff's evidence (which defendant has not disputed) is that, at the time of original construction, there were no base flood elevation or other minimum elevation requirements in effect, and that the only restriction in place was that the building's height could not exceed two stories.  (*Id.*)  The comprehensive floodplain management Ordinance implemented by the City of Gulf Shores in 2001 unquestionably contained increased regulatory provisions for purposes of Mainstay's ICC coverage eligibility.

Gulf Shores, Ala., Code § 7-78(b)(1) (2001).[6]  The parties agree that the base flood elevation ("BFE") applicable to Mainstay's rebuilt structure is 12 feet.  (*See* Decker Dep., Exh. 5, at Elevation Certificate.)[7]  Further, the parties are in accord that if the Insured Building did not comport with the Ordinance's minimum BFE of 12 feet at the time of Hurricane Ivan, then Mainstay would be eligible for ICC coverage to defray rebuilding costs incurred to make the structure satisfy the more stringent current requirements.

The Ordinance also includes provisions concerning "elevated buildings," which are defined as "non-basement building[s] built to have the lowest floor of the lowest enclosed area elevated above the ground level by means of fill, solid foundation perimeter walls, pilings, columns, piers, or shear walls adequately anchored so as not to impair the structural integrity of the building during a base flood event."  Gulf Shores, Ala., Code § 7-73.  According to the Ordinance, elevated buildings do not violate the BFE requirement if they have a sub-BFE unfinished or flood-resistant enclosure area "located below the lowest floor formed by foundation and other exterior walls," so long as that enclosure is used only for "parking of vehicles, limited storage of maintenance equipment used in connection with the premises, or entry to the elevated area."  *Id.* at § 7-78(a)(4)(b).  To qualify for that provision, however, the

---

[6]     The Ordinance also provides that "[a]ll residential structures constructed within the VE zone shall have their lowest structural member no lower than three (3) feet above base flood elevation."  *Id.* at § 7-78(b)(1)(a).  Substantial evidence in the record suggests that the Insured Building was in fact located in the VE zone.  (*See, e.g.,* Decker Dep., Exh. 5, at August 10, 2006 correspondence; Decker Dep., Exh. 9, at 11/7/07 Elevation Certificate.)  In that event, Mainstay's new construction would have to be such that its lowest structural member was 3 feet above BFE (which the parties have agreed is 12 feet), for a minimum of 15 feet mean sea level, in order to comport with the Ordinance.  However, no party has argued or suggested that the more demanding VE standard represents the applicable test for Mainstay's eligibility for ICC benefits; rather, the parties have couched their positions solely in terms of lowest floors and BFE levels.  The parties having remained silent on this point, the Court will not interject it into the analysis *sua sponte*.

[7]     Building elevations and BFE requirements are measured in relation to "mean sea level," which is "[t]he average height of the sea for all stages of the tide" and "is used as a reference for establishing various elevations within the floodplain."  Gulf Shores, Ala., Code § 7-73.  "Mean sea level" is the operative reference point for all BFE requirements and measured elevation levels utilized herein.

interior portion of the enclosed area "shall not be partitioned or finished into separate rooms." *Id.* at § 7-78(a)(4)(c).

### C. The Claims Process and the Insured's Elevation Certificate.

The Insured Building sustained catastrophic damage in Hurricane Ivan. There is no dispute that Mainstay made a claim for SFIP benefits under Coverage A, which was paid in the amount of approximately $150,000. (Doc. 30, Exh. C.) Mainstay also made a claim to Auto Owners for ICC coverage; however, on August 25, 2006, Auto Owners notified Mainstay in writing that "the dwelling already appears to be in compliance to the community's current elevation requirements," such that ICC coverage would not be available. (Decker Dep., Exh. 4.) Upon Mainstay's request for reconsideration, Auto Owners reiterated its determination that the Insured Building was already in compliance with the Ordinance because "the policy is rated as a building elevated two (2) feet above BFE. Dauphin Island's [*sic*] current floodplain ordinance requires buildings to be elevated two (2) feet above Base Flood Elevation (BFE)." (*Id.*, Exh. 13.) Mainstay appealed Auto Owners' determination to FEMA, which denied the appeal because "Auto-Owners' records show that your building is rated elevated at a Base Flood Elevation (BFE) of +2." (*Id.*, Exh. 12.)[8] However, FEMA invited Mainstay to submit further evidence "by obtaining a qualified surveyor, engineer, and or architect to substantiate what portion, if any of the structure was below the qualifying areas of the BFE." (*Id.*)

Mainstay did exactly that, hiring Borden Engineering & Surveying Company to determine the elevation of the Insured Building prior to Hurricane Ivan. On November 7, 2007, Richard Borden, a licensed professional engineer and land surveyor, submitted a written report detailing his findings that the first floor of the Insured Building had an elevation of 10.0 feet, and

---

[8] The factual basis for Auto Owners' and FEMA's initial determination has not been developed in the record; however, the parties apparently concur that the initial conclusion that the Insured Building was in compliance with current Gulf Shores BFE provisions was predicated on information from an old insurance application. (Doc. 30, at 8; doc. 33, at 7.) Both sides also appear to agree that subsequent investigation and documentation (including, most notably, the reconstructed elevation certificate prepared by Mainstay's engineer, Richard Borden) negated that basis for denial by presenting information different than that set forth in the old application. There have been no waiver or estoppel arguments suggesting that Mainstay was bound by the contents of that application or that coverage was nullified by any inaccuracies therein; therefore, the Court will not *sua sponte* investigate the viability of same.

that the second floor had an elevation of 19.8 feet. (Decker Dep., Exh. 9.) On that basis, Borden reconstructed an elevation certificate for the Insured Building reflecting that the top of the bottom floor (also labeled as enclosure floor) had been at 10.0 feet, with the top of the next higher floor being at 19.8 feet. (*Id.*) Mainstay submitted Borden's report and reconstructed elevation certificate to Auto Owners; however, Auto Owners referred this supplemental documentation to its underwriting department, and its claims department evidently never examined these materials with an eye towards re-evaluating Mainstay's ICC claim. (Decker Dep., at 69-73.)

The net result was that Mainstay's ICC claim was denied, forcing it to bear the full cost of compliance with the BFE provisions of the City of Gulf Shores' current Ordinance in connection with the rebuilding of the insured structure.[9] This lawsuit followed.

### D.    *Auto Owners' Shifting Reasons for Denial of Coverage.*

Mainstay correctly points out that Auto Owners' position as to the reasons for denial of ICC coverage has not remained consistent throughout this litigation. In its discovery responses, Auto Owners stated that Mainstay's ICC claim was denied because "the elevation certificate shows that the structure was two feet above Base Flood Elevation" and that "[t]he risk was already elevated two feet above BFE." (Doc. 35, Exh. 3, at #6-7.) Thus, Auto Owners' discovery responses hew closely to the contention in the various denial letters to Mainstay that

---

[9]    Mainstay maintains that those increased compliance costs totaled $69,000, but does not furnish any evidence tending to support such a conclusion. To be sure, plaintiff suggests that its calculations are supported by an itemized list of construction expenses attached as part of Exhibit 5 to the Decker Deposition. The Court has reviewed that list, which consists of dozens of entries totaling more than $330,000. It is not apparent which of those entries relate to increased costs of compliance, as compared to construction costs that would have been incurred in the rebuilding process irrespective of the Gulf Shores BFE requirements. That said, Auto Owners' 30(b)(6) representative, Doreen Decker, testified that, assuming eligibility, the amount of Mainstay's ICC expenses exceeded the $30,000 policy maximum. (Decker Dep., at 97.) To allay any lingering doubt as to the sufficiency of its proof of damages, Mainstay stated repeatedly in its principal brief that Auto Owners had conceded that (setting aside the eligibility issue) the amount of Mainstay's ICC claim would properly be for the $30,000 policy limit. (Doc. 30, at 6, 9.) Auto Owners neither challenged that characterization in its opposition brief, nor presented evidence or argument to the contrary; therefore, it is deemed admitted that Mainstay's damages (if its ICC claim is valid) are in the amount of the $30,000 policy limits for Coverage D.

ICC coverage was unavailable because the building had been rated as elevated at BFE plus two feet, apparently based on incorrect information set forth in an earlier application.

On summary judgment, however, Auto Owners has abandoned the BFE +2 justification for denial of coverage, based presumably on its admission "that it could not locate an elevation certificate for the subject property that was pre-loss." (Doc. 33, at 2.) Rather than asserting that data in the initial policy application or underwriting materials warranted denial of ICC coverage, Auto Owners now states that Mainstay is ineligible for such coverage based solely on the terms of Borden's reconstructed elevation certificate.[10] Defendant offers no explanation for the discrepancy in its reasons for denial. Be that as it may, defendant is confined to its arguments on summary judgment for denial of the ICC claim, and only those contentions will be considered at this time. The BFE + 2 / application justification has not been proffered by Auto Owners on summary judgment, and will not be examined.

## II.     Analysis.

### A.     *Applicable Legal Standards*.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be

---

[10] Indeed, Auto Owners states in its summary judgment brief that "it is the Plaintiff's reconstructed elevation certificate that shows the dwelling was an elevated structure, already above BFE, and thus not eligible for ICC benefits." (Doc. 33, at 2-3.)

believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

To the extent that this action turns on interpretation of the SFIP issued to Mainstay, the Court recognizes that "the standard policies issued under the [National Flood Insurance] Program are governed by federal law ..., applying standard insurance law principles." *Wright v. Director, Federal Emergency Management Agency*, 913 F.2d 1566, 1571 (11th Cir. 1990); *see also Shuford v. Fidelity Nat. Property & Cas. Ins. Co.*, 508 F.3d 1337, 1344 (11th Cir. 2007) ("[t]he plain language of the [SFIP], which is embodied in a federal regulation, reflects a clear intent to preempt claims under state law"); *Newton v. Capital Assur. Co.*, 245 F.3d 1306, 1309 (11th Cir. 2001) ("SFIP contracts are interpreted using principles of federal common law rather than state contract law."). These "standard insurance law principles" include such well-worn propositions as the Court's obligation to enforce the natural and plain meaning of the policy's language and to construe ambiguous terms against the drafter. *See Carneiro Da Cunha v. Standard Fire Ins. Co. / Aetna Flood Ins. Program*, 129 F.3d 581, 585 (11th Cir. 1997).

### B. Plaintiff's Eligibility for ICC Coverage.

The issue presented on summary judgment is quite discrete. The parties do not disagree about the terms or meaning of the applicable SFIP. Nor do they differ as to the condition, structure and configuration of the Insured Building at the time of Hurricane Ivan. Their singular point of contention is whether the Insured Building did or did not comport with current elevation requirements imposed by the City of Gulf Shores.[11]

---

[11] Auto Owners has devoted nearly half of its summary judgment brief to a synopsis of the legal and regulatory framework of the NFIP, apparently to make the point that it has every incentive to pay valid, covered SFIP claims, given that such payments are made with U.S. Treasury funds and Auto Owners receives a small commission for such payments. But Mainstay has brought no claim of bad faith and its claims do not rest on allegations of nefarious motives by Auto Owners; rather, the only question presented is whether Mainstay is or is not entitled to ICC benefits under the SFIP. That Auto Owners' interests were aligned with Mainstay's concerning the payment of valid claims sheds little light on that inquiry.

Auto Owners asserts that it did. Auto Owners' argument begins with the notion that the Insured Building constituted an "elevated building" for purposes of the SFIP (and, presumably, the Gulf Shores Ordinance, as well).[12] Mainstay advances no opposition to this point. To the contrary, Mainstay's unrebutted evidence is that the Insured Building included a lower floor "constructed of wood which was placed on beams and joists attached to pilings" above ground level. (Gilges Aff., ¶ 4.) These characteristics support the premise that the Insured Building was an "elevated building" under both the SFIP and the Ordinance.

The mere fact, however, that the Insured Building was an "elevated building" is dispositive of nothing. The linchpin of Auto Owners' position on summary judgment is that Mainstay was not eligible for ICC benefits because Borden's reconstructed elevation certificate shows that "the subject structure is an elevated structure ... with the first elevated floor at 19.8 feet." (Doc. 33, at 9.) It is undisputed that the City of Gulf Shores enforces a BFE of 12 feet. Auto Owners reasons that the Insured Building was in compliance with the Ordinance because its first elevated floor was at 19.8 feet, nearly eight feet higher than BFE. Auto Owners is correct, of course, that plaintiff's evidence confirms that the Insured Building had a floor elevated to 19.8 feet. But there was another, lower floor below the 19.8-foot level. According to the reconstructed elevation certificate, there was a lower floor (the so-called "Enclosure Floor") at 10.0 feet, some two feet <u>below</u> BFE. Auto Owners' position (which it did not develop in summary judgment briefing) is apparently that the Enclosure Floor somehow "doesn't count" for purposes of the Ordinance's minimum elevation requirements.

Construing Auto Owners' position generously, defendant appears to be arguing that the Enclosure Floor's elevation below BFE is of no consequence because it was not an elevated

---

[12] Auto Owners recites the definition of "elevated building" set forth in the SFIP, without ever explaining how a structure's status as an "elevated building" affects its eligibility for Coverage D benefits under the SFIP. The term "elevated building" appears nowhere in the section of the SFIP setting forth the parameters of Coverage D. Furthermore, as the Court understands it, "elevated building" status matters for Coverage D only insofar as it impacts or alters in some way the BFE requirements imposed by the relevant ordinance. Defendant has not made that link here, but instead starts and stops with the (in and of itself, unremarkable) proposition that the Insured Building constitutes an "elevated building" under SFIP definitions.

floor.[13]  There are two insuperable flaws in that reasoning.  First, the record is devoid of any evidence that the Enclosure Floor was not, in fact, elevated, and Mainstay has come forward with substantial uncontroverted evidence to the contrary.  In particular, Mainstay's Manager, Ralph Gilges, averred that the Enclosure Floor was "placed on beams and joins attached to pilings," with a "gap between the sand and the underneath of the floor," and that the magnitude of the gap varied depending on the shifting of the sands by natural forces.  (Gilges Aff., ¶ 4.)  Gilges also made an unrefuted statement that, based on these features, the Enclosure Floor of the Insured Building "was in fact 'elevated.'" (*Id.*)  To the extent, then, that Auto Owners would have the Court discount the sub-BFE height of the Enclosure Floor because it was not an elevated floor, Mainstay has conclusively rebutted that proposition.

        Second, setting aside whether the Enclosure Floor was or was not elevated, Auto Owners has identified no provision of the Ordinance, the SFIP, or the applicable statutes or FEMA regulations that would exempt non-elevated floors from Gulf Shores' BFE requirements or eligibility for ICC benefits.  Nor has the undersigned's independent review of those sources divulged any basis in law or fact for the proposition that only elevated floors matter for purposes of municipal BFE requirements.  At best, the Gulf Shores Ordinance (which Auto Owners has not cited) provides that elevated buildings do not violate the BFE requirement if they have lower unfinished enclosure areas used only for parking, storage of maintenance equipment, or entry into the elevated area.  The Ordinance clearly states that enclosures do not qualify for this exemption from minimum elevation requirements if they are partitioned or finished into separate rooms.  Uncontroverted evidence demonstrates that the lower floor of the Insured Building did not satisfy these requirements.  The Enclosure Floor was not used solely for parking, storage or access to the upper floor; to the contrary, it was a partitioned, finished, habitable space.  (Gilges Aff., ¶ 4.)  The Enclosure Floor had a bedroom, a bathroom, a hallway, and a laundry area.  (*Id.*)  It had indoor plumbing, electricity, and climate control features.  (*Id.*)  By no stretch of the imagination could it be viewed as a mere unfinished or flood-resistant enclosure area to an

---

[13]     Although Auto Owners does not expressly make such a statement, it is implicit in Auto Owners' summation that "the subject structure is an elevated structure, under the definition of the SFIP, with the first elevated floor at 19.8 feet.  As such, it is Auto Owners' position that the subject property is not eligible for ICC benefits." (Doc. 33, at 9.)

elevated building for purposes of the Gulf Shores Ordinance.

Simply put, the Court cannot agree with Auto Owners' position that the Enclosure Floor's elevation was irrelevant for BFE-compliance purposes.  It is undisputed that the Enclosure Floor of the Insured Building was below BFE at the time of Hurricane Ivan.  Plaintiff has offered substantial unchallenged evidence showing that the Enclosure Floor was subject to the Ordinance's elevation requirements.  Auto Owners has identified no persuasive basis in law or fact for excluding that Enclosure Floor from any assessment of the Insured Building's compliance with the Gulf Shores Ordinance.  Accordingly, the Court finds that the Insured Building was not in compliance with Gulf Shores floodplain management standards at the time of the loss.  That being the case, Mainstay was eligible for ICC coverage for that loss in the amount of the SFIP policy limits of $30,000, and Auto Owners breached the policy by denying the claim.  There being no genuine issues of material fact on this issue, Mainstay is entitled to entry of judgment in its favor as a matter of law.

### III.    Conclusion.

For all of the foregoing reasons, Plaintiff's Motion for Summary Judgment (doc. 29) is **granted**.  Final judgment will be entered in favor of plaintiff and against defendant in the amount of **$30,000**.[14]

DONE and ORDERED this 17th day of August, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[14] The Complaint suggests that Mainstay seeks an award of prejudgment interest; however, such relief is unavailable here as a matter of law.  *See Newton*, 245 F.3d at 1310, 1312 (holding "that the no-interest rule prohibits award of prejudgment interest against WYO companies" based on rationale that "prejudgment interest awards against WYO companies are direct charges on the public treasury forbidden by the no-interest rule").  Accordingly, the Final Judgment entered herein will not incorporate an award of prejudgment interest.